**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION**

Case No.:

Sisy Orobitg, individually, and
on behalf of others similarly situated,

    Plaintiff,

v.

Caliburn International, LLC, and
Comprehensive Health Services, LLC,

    Defendants.
_____/

**COLLECTIVE AND CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

    Plaintiff Sisy Orobitg, individually and on behalf of all others similarly situated, by and through her attorneys, Brown, LLC and Whittel & Melton, LLC, files this Collective and Class Action Complaint against Defendants Caliburn International, LLC, and Comprehensive Health Services, LLC, and states as follows:

**INTRODUCTION**

    1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Sisy Orobitg, individually and on behalf of all similarly situated persons employed by Defendants Caliburn International, LLC and Comprehensive Health Services, LLC, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Workers Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et. seq.* ("WARN Act").

    2.    Defendant Caliburn International, LLC is a professional services provider for the U.S. government and commercial clients worldwide.

    3.    Defendant Comprehensive Health Services, LLC is a for-profit medical

1

...

management services provider that contracts with the United States federal government. It is a wholly owned subsidiary of Caliburn International, LLC.

4. Defendants operate Homestead Temporary Shelter for Unaccompanied Children located in Homestead, Florida, which is the largest and only for-profit shelter for unaccompanied migrant children in the United States.

5. Count I is brought under the FLSA, individually and as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of all persons who worked as hourly-paid employees at Defendants' child detention shelter in Homestead, Florida at any time within the period of the three (3) years prior to the commencement of this action through the date of judgment (the "FLSA Collective"), and seeks relief for Defendants' failure to pay Plaintiff and the other FLSA Collective members for hours worked before and after their scheduled shifts and/or during their meal breaks in excess of forty (40) in a workweek, in violation of the FLSA's overtime provisions. *See* 29 U.S.C. § 207(a)(1).

6. Count II is brought under the WARN Act, individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all persons employed by Defendants at its child detention shelter in Homestead, Florida who were laid off by Defendants in August and October 2019 (the "WARN Act Class"), and seeks relief for Defendants' mass layoff of employees without providing them at least sixty (60) days advance notice, in violation of the WARN Act.

## **JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Plaintiff's WARN Act and FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

8. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9. The court has personal jurisdiction over Defendant Comprehensive Health Services, LLC because Defendant is headquartered in Florida.

10. This Court has personal jurisdiction over Defendant Caliburn International, LLC because Defendant does business within the state of Florida and maintains systematic and continuous contacts with the State of Florida, from which Plaintiff's claims arise.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

12. Plaintiff SISY OROBITG is a resident of Naranja, Florida in Miami-Dade County.

13. Plaintiff worked for Defendants as an hourly-paid case manager from approximately December 2018 through approximately October 25, 2019 in Defendants' Homestead, Florida child detention center.

14. Plaintiff has signed a consent form to join this lawsuit, which is attached as *Exhibit 1*.

15. Defendant Comprehensive Health Services, LLC has a principal business address of 8600 ASTRONAUT BLVD, CAPE CANAVERAL, FL 32920 and registered agent CORPORATION SERVICE COMPANY at 1201 HAYS STREET, TALLAHASSEE, FL 32301.

16. Defendant Caliburn International, LLC is headquartered in Virginia and has a principal business office at 10701 PARKRIDGE BLVD STE 200, RESTON, VA 20191.

17. Defendant Caliburn International, LLC's registered agent for service of process in Virginia is CORPORATION SERVICE COMPANY at 100 SHOCKOE SLIP 2ND FLR, RICHMOND, VA 23219.

## FACTUAL ALLEGATIONS

**Defendants Violated the FLSA**

18. Defendants jointly employed Plaintiff and other members of the FLSA Collective and classified them as hourly-paid, non-exempt employees, and have not guaranteed them any minimum weekly salaries.

19. Defendants utilized a system called Easy Clocking, which reflects hourly-paid employees' clock-in and clock-out times.

20. Defendants utilized another timekeeping system called Deltek, which reflects the time for which hourly-paid employees will be compensated.

21. Easy Clocking time is transferred into Deltek and approved by Defendants' management before it is paid.

22. Defendants maintained a common policy of prohibiting hourly-paid employees from being "clocked in" before and after their scheduled shifts, and/or during their meal breaks, regardless of whether they were working during such times.

23. As a result, hourly-paid employees regularly worked "off the clock" before and after their scheduled shifts, and/or during their meal breaks, and were not paid for such work.

24. When hourly-paid employees clocked in before and after their scheduled shifts, and/or during their meal breaks, their time records would be altered to reflect 40 hours before being approved in Deltek.

25. In many weeks, the work hourly-paid employees performed before and after their scheduled shifts and/or during their meal breaks occurred in excess of forty (40) hours in a workweek, and thus should have been compensated at time-and-a-half of their regular rates of pay, but were not.

26. Defendants knew that hourly-paid employees were working before and after their scheduled shifts, and/or during their meal breaks, but failed to compensate them for such time.

**Defendants Violated the WARN Act**

27. In August 2019, Defendants laid off over 2,000 full-time employees at its Homestead, Florida shelter.

28. Over the course of October 29, 2019 to November 1, 2019, Defendants laid off another approximately 2,000 full-time employees at its Homestead, Florida shelter, including Plaintiff, in anticipation of closing the shelter on November 30, 2019 due to the federal government not renewing its contract with Defendants.

29. The employees Defendants laid off over the course of October 29, 2019 to November 1, 2019 amounted to nearly all of the shelter's remaining full-time employees.

30. The laid-off employees were entitled to receive 60 days advance written notice under the WARN Act from the Defendants.

31. Defendants failed to give the employees notice at least sixty (60) days prior laying them off, in violation of the WARN Act.

32. Defendants failed to pay Plaintiff and the other laid-off employees their respective wages, salary, commissions, bonuses, accrued holiday pay vacation which would have accrued for sixty (60) days following their respective layoffs without notice and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

## COLLECTIVE ACTION ALLEGATIONS

33. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of the FLSA Collective, defined as:

> *All persons who worked as hourly-paid employees at Defendants' Homestead, Florida shelter at any time within the period of the three (3) years prior to the commencement of this action through the date of judgment.*

Plaintiff reserves the right to amend this definition as necessary.

34. With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

35. The employment relationships between Defendants and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every FLSA Collective member, such as:

    a. Whether the FLSA Collective members spent time working pre-shift;

    b. Whether the FLSA Collective members spent time working post-shift;

    c. Whether the FLSA Collective members spent time working during their

        meal breaks;

        d.  Whether Defendants maintained a policy or practice of failing to pay FLSA Collective members for time spent working before and/or after their shifts and/or during their meal breaks;

        e.  Whether Defendants failed to pay FLSA Collective members time and a half for all hours they worked over 40 in a workweek.

        f.  Whether Defendants' violations of the FLSA were willful and/or in good faith.

36.    Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include several thousand members. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

37.    Plaintiff brings her WARN Act claims as a class action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of the WARN Act Class, defined as:

> *All persons who suffered a loss of employment as part of any mass layoff and/or plant closing conducted by Defendant(s) at any time within the applicable statutory period.*

Plaintiff reserves the right to amend this definition as necessary.

38.    The members of the WARN Act Class are so numerous that joinder of all class members in this case would be impractical. Plaintiff reasonably estimates that there are several thousand members of each of the WARN Act Class. Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

39.    There is a well-defined community of interest among members of the WARN Act Class and common questions of law and fact predominate in this action over any questions affecting individual members of the classes. These common legal and factual questions, include, but are not limited to, the following:

      a. Whether Defendants' layoff of WARN Act Class members in August 2019 and October 2019 qualify as a "mass layoff" and/or "plant closing" under the WARN Act;

      b. Whether Defendants provided WARN Act Class members written notice that complied with the requirements of the WARN Act.

40. Plaintiff's claims are typical of those of the members of the WARN Act Class in that she and all other class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other WARN Act Class members' claims and her legal theories are based on the same legal theories underlying the claims of all other members.

41. Plaintiff will fully and adequately protect the interests of the WARN Act Class and has retained counsel who are qualified and experienced in the prosecution of WARN Act and wage and hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the WARN Act Class.

42. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

43. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

44. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

45. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Brought Individually and as a Collective Action Under 29 U.S.C. § 216(b))
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME**

46. Plaintiff re-alleges and incorporates all previous paragraphs herein.

47. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

48. 29 CFR § 785.19(a) provides, in part:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

49. Defendants are an enterprise whose annual gross volume of sales made or business done exceeds $500,000.

50. Defendants are an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or

materials that have been moved in or produced for commerce.

51. Plaintiff and other FLSA Collective Members worked many workweeks in excess of 40 hours within the last three years.

52. In many weeks, the work Plaintiff and other members of the FLSA Collective performed before and after their scheduled shifts and/or during their meal breaks occurred in excess of forty (40) hours in a workweek, and thus should have been compensated at time-and-a-half of their regular rates of pay, but was not.

53. Defendants' failure to pay Plaintiff and other FLSA Collective members overtime wages was knowing and willful. Defendants knew that their policies resulted in Plaintiff and FLSA Collective members not being paid for time spent working outside of their scheduled shift, and Defendants could have properly compensated them for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

54. Defendants' failure to pay Plaintiff and other FLSA Collective members overtime was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

55. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

56. Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

57. As a result of Defendants' uniform and common policies and practices described above, Plaintiff and the FLSA Collective members were illegally deprived of overtime wages earned, in such amounts to be determined at trial, and are entitled to recovery of such total unpaid

amounts, liquidated damages, reasonable attorneys' fees, costs and other compensation pursuant to 29 U.S.C § 216(b).

**COUNT II**
**(Brought Individually and as a Class Action Under Rule 23)**
**WARN Act**
**FAILURE TO PROVIDE NOTICE**

58. Plaintiff re-alleges and incorporates all previous paragraphs herein.

59. Defendants are an "employer" Plaintiff and the other members of the WARN Act Class, for purposes of the WARN Act.

60. Defendants employed 100 or more full-time employees.

61. In August 2019, Defendants laid off over 2000 full-time employees at its Homestead, Florida shelter.

62. On or around October 25, 2019, Defendants laid off another approximately 2000 full-time employees at its Homestead, Florida shelter, including Plaintiff.

63. The employees Defendants laid off amounted to all of the shelter's full-time employees.

64. The layoffs qualify as a "mass layoff" and/or a "plant closing" for purposes of the WARN Act. *See* 29 U.S.C. § 2101(a)(3).

65. Defendants' actions at the Homestead, Florida shelter resulted in Plaintiff and the other members of the WARN Act Class suffering an "employment loss" as that term is defined by the WARN Act (29 U.S.C. § 2101(a)(6)) for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

66. Pursuant to the WARN Act, Defendants were required to provide 60 days prior written notice of the layoff, or notice as soon as practicable, to the affected employees, on their representative, explaining why the sixty (60) day prior notice was not given.

67. Defendants failed to give Plaintiff and other WARN Act Class members notice at

least sixty (60) days prior laying them off, in violation of the WARN Act.

68.     Defendants failed to pay the Plaintiff and other WARN Act Class members their respective wages, salary, commissions, bonuses, accrued holiday pay vacation which would have accrued for sixty (60) days following their respective layoff without notice and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

69.     The Plaintiff and each of the WARN Act Class members who were employed by the Defendants' layoffs at the Homestead, Florida shelter were "affected employees" as defined by the WARN Act.

70.     The Plaintiff and each of the WARN Act Class members are "aggrieved employees" of the Defendants as that term is defined by the WARN Act.

71.     As a result of the Defendants' failure to pay wages, benefits and other monies as asserted, the Plaintiff and WARN Act Class members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of their layoff.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, Sisy Orobitg, requests an entry of an Order the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA overtime claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's WARN Act claims (Count II);

c. Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and WARN Act Class members, and permitting Plaintiff to send notice of this action to all those similarly situated

    individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the WARN Act Class, and undersigned counsel as Class counsel for the same;

e. An incentive award for the Plaintiff for serving as representative of the FLSA Collective and WARN Act Class in this action;

f. Declaring Defendants willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. Declaring Defendants violated the WARN Act and that said violations were intentional, willfully oppressive, fraudulent and malicious;

h. Granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the FLSA Collective and WARN Act Class the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by statute;

j. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Sisy Orobitg, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

Dated: November 15, 2019              RESPECTFULLY SUBMITTED,

By: */s/ Jay P. Lechner*
Jay P. Lechner
FL State Bar No. 0504351
lechnerj@theFLlawfirm.com
pleadings@theFLlawfirm.com
bonnie@theFLlawfirm.com
pls@theFLlawfirm.com
Whittel & Melton, LLC
11020 Northcliffe Blvd
Spring Hill, FL 34608
352-683-2016 – Telephone
352-556-4839 – Facsimile
Attorney for Plaintiff
*Local Counsel for Plaintiff*

Jason T. Brown (will PHV)
Nicholas Conlon (will PHV)
Lotus Cannon (will PHV)
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com
*Lead Counsel for Plaintiff*